United States District Court Case No. CIV 2:12-CV-00249-GEB

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
## (Sacramento Division)

In Re:

STEVEN K. ZINNEL,

Debtor.

---

STEVEN K. ZINNEL,

Appellant,

v.

SUSAN K. SMITH
Chapter 7 Trustee,

Appellee.

Appeal from the United States Bankruptcy Court for the
Eastern District of California, Case No. 05-28800-C-7,
United States Bankruptcy Judge Christopher M. Klein

## APPELLEE'S BRIEF

Howard S. Nevins, Esq.
Joel S. Levy, Esq.
Aaron A. Avery, Esq.
Hefner, Stark & Marois, LLP
2150 River Plaza Drive, Suite 450
Sacramento, CA 9583
(916) 925-6620

Attorneys for Appellee

HEFNER, STARK & MAROIS, LLP
Sacramento, California

# TABLE OF CONTENTS

Page

I. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . 2

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Request for Admissions, Set One. . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. Special Interrogatories, Set One. . . . . . . . . . . . . . . . . . . . . . . . . 4

    C. Request for Production of Documents, Set One and Set Two. . . . . . . 5

IV. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. The Bankruptcy Court Correctly Found That Appellant Has No Standing to Propound Discovery to Appellee. . . . . . . . . . . . . . . . . . . . 10

    C. The Bankruptcy Court Properly Reconsidered Its Order On the Motion for Protective Order Pursuant To Federal Rule Of Bankruptcy Procedure 9023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D. Even if Appellant Had Standing, The Issuance of the Protective Order Was Proper on Other Grounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

HEFNER, STARK & MAROIS, LLP
Sacramento, California

# TABLE OF AUTHORITIES

## FEDERAL CASES

389 Orange Street Partners v. Arnold, 179 F.3d 656 . . . . . . . . . . . . . . . . . . . . . 17

In re Arochem Corporation, 181 B.R. 693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Basham, 208 B.R. 926 (9th Cir. BAP 1997), aff'd, 152 F.3d 924 . . . . . . . . . 10

Beloit Liquidation Trust v. Century Indemnity Co.,

2003 U.S.Dist. LEXIS 2082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Captain Blythers, Inc., 311 B.R. 530 . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Carlson Cos., Inc. v. Sperry and Hutchinson Co., 374 F.Supp. 1080 . . . . . . . . . . . 22

In re Coleman (1991, BC ND Tex) 131 B.R. 59 . . . . . . . . . . . . . . . . . . . . . . . . 13

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 . . . . . . . . . . . . . . . . . . . . . . . 10

In re Crest Door, 57 B.R. 830 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Cult Awareness Network, Inc., 151 F.3d 605 . . . . . . . . . . . . . . . . . 15, 16

Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network,

Inc.), 1997 U.S.Dist. LEXIS 8454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Food Lion, Inc. v. United Food and Commercial Workers International Union,

AFL-CIO-CLC, et al., 103 F.3d 1007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Global Industrial Techs., Inc., 645 F.3d 201 . . . . . . . . . . . . . . . . . . . . . 10

Heath v. America Express Travel Related Services Co. (In re Heath),

331 B.R. 424 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hofer v. Mack Trucks, Inc., 981 F.2d 377 . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re I & F Corp. (1998, BC SD Ohio) 219 B.R. 483 . . . . . . . . . . . . . . . . . . . . 13

In re Kazis, 257 B.R. 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877 . . . . . . . . . . . . . . . . . 17

In re Lapointe (1984, BC WD Ky) 39 B.R. 80 . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lujan v. Defenders of Wildlife, 504 U.S. 555 . . . . . . . . . . . . . . . . . . . . . . . . . 10

M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hospital, Inc.,

981 F.2d 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

HEFNER, STARK & MAROIS, LLP
Sacramento, California

Marchand v. Mercy, 22 F.3d 933 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McNutt v. General Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178 . . . . . . . . 11

Morlan v. Universal Guaranty Life Insurance Co., 298 F.3d 609 . . . . . . . . . . . . 11

Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation,

331 F.3d 1041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Phillips v. General Motors Corporation, 307 F.3d 1206 . . . . . . . . . . . . . . . . . . 22

In re Popp, 323 B.R. 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

In re Pruitt, 319 B.R. 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Rake, 363 B.R. 146 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Rodeo Canon Dev. Corp., 126 Fed.Appx. 353 (9th Cir. 2005) . . . . . . . . . 14

Rodeo Canon Development Corp., 362 F.3d 603 . . . . . . . . . . . . . . . . . . . . . . . 14

Roman Catholic Archbishop of Portland in Oregon v. Various Tort

Claimants, 661 F.2d 417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Spenlinhauer v. O'Donnell, 261 F.3d 113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Stine v. Flynn (In re Stine), 254 B.R. 244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Stinnett, 465 F.3d 309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Willemain v. Kivitz, 764 F.2d 1019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL STATUTES

11 U.S.C. § 726(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. § 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11 U.S.C. § 726(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Bankruptcy Procedure 7026(c) . . . . . . . . . . . . . . . . . . . . . . . 21

Federal Rules of Civil Procedure, Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure, Rule 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . 17

HEFNER, STARK & MAROIS, LLP
Sacramento, California

# I.

## STATEMENT OF THE CASE

Appellee does not agree with Appellant's statement of the case because it contains argumentative and misleading statements, as well as statements that are superfluous to the real issues before this Court.

In view of Appellant's stated intention to oppose any and all efforts of Appellee to administer the Bankruptcy Case (Appellant's Excerpts of Record on Appeal (hereinafter "EOR"), Tab 1, 1-2), Appellee attempted to avoid the time and cost of specifically responding to extensive discovery requests propounded by Appellant by seeking a protective order from the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court") that Appellee was not required to answer Appellant's discovery requests.  In her motion for a protective order, Appellee argued that Appellant lacked standing to pursue the subject discovery and that the discovery was improper on other grounds.  Appellant opposed the motion, primarily arguing that the discovery properly sought information and documents relating to the proposed sale by Appellee of the bankruptcy estate's disputed interest in a closely-held corporation, System 3, Inc. ("System 3").  In direct conflict with that position, however, Appellant stated in other pleadings that his interest in System 3 had been assigned to a third party prior to the Bankruptcy Case.  (EOR, Tab 17, 17)

Over Appellant's opposition, the Bankruptcy Court granted Appellee's motion for approval of the sale, specifically finding that Appellant lacked standing to oppose the motion in that he had failed to establish that he would be adversely and pecuniarily affected by the outcome of the motion. (EOR, Tab 41, 514-515, and Tab 71, 802)

On December 30, 2011, the Bankruptcy Court initially denied Appellee's motion for a protective order without a hearing. (EOR, Tab 55, 686) Appellee filed a motion for reconsideration of such denial on January 6, 2012, contending that the Bankruptcy Court's denial of the motion for a protective order was clearly inconsistent with the Bankruptcy Court's prior determination that Appellant lacked standing to oppose the

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   motion to sell estate assets. (EOR, Tabs 57, 58 and 59) The Bankruptcy Court granted

2   the motion for reconsideration without a hearing, and, on January 20, 2012, entered a

3   protective order as requested by Appellee. (EOR, Tab 62, 704) In issuing the protective

4   order, the Bankruptcy Court stated that its previous denial of the motion was "the

5   opposite of what it intended to rule in light of the court's ruling that Steven Zinnell lacks

6   standing." (EOR, Tab 62, 704) Appellant filed opposition to the motion for

7   reconsideration on January 23, 2012. (EOR, Tabs 63, 64, 65, 66 and 67), after which the

8   Bankruptcy Court confirmed its granting of the motion for reconsideration in civil

9   minutes entered on January 24, 2012. (EOR, Tab 68, 772)

10       On January 27, 2012, Appellant filed his Notice of Appeal from the Bankruptcy

11  Court's order granting the motion for reconsideration and protective order. (EOR, Tab

12  69, 773-781)  On the same date, Appellant filed a statement of election to have the

13  appeal heard by this Court. (EOR, Tab 71, 782-783)

14                                    II.

15             **STATEMENT OF THE ISSUES PRESENTED**

16       Appellant's self-serving and argumentative statement of the issues on this appeal

17  fails to properly articulate the issues that are actually before this Court. Appellee believes

18  this appeal presents the following issues arising from an order issued by the Bankruptcy

19  Court in the Bankruptcy Case:

20       1.   Whether the Bankruptcy Court committed reversible error by issuing

21  a protective order excusing Appellee from responding to Appellant's discovery requests.

22       2.   Whether the Bankruptcy Court committed reversible error by granting

23  Appellee's motion for reconsideration of its order initially denying Appellee's motion

24  for a protective order.

25                                    III.

26                      **STATEMENT OF FACTS**

27       Although Appellant includes an extensive "statement of facts" in his Opening

28  Brief, much of which is actually argument, the pertinent facts on this appeal are relatively

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   straightforward and are set forth below.

2       Appellant commenced the Bankruptcy Case with the filing of a voluntary Chapter

3   7 petition on July 20, 2005. (EOR, Tab 3, 7) The Bankruptcy Case was closed thereafter,

4   but it was ordered reopened on June 17, 2011, following application of the Office of the

5   United States Trustee ("UST"). (EOR, Tab 3, 7-8) The UST's application was based on

6   a criminal indictment filed against the Debtor and Derian Eidson in the United States

7   District Court, Sacramento Division (Case No. 2:11-CR-00234-FCD).  The indictment

8   alleges sixteen counts of bankruptcy crimes, which include Appellant's alleged failure

9   to disclose assets in his Bankruptcy Case. (EOR, Tab 3, 8, and Tab 31, 367-388)

10      Appellant's bankruptcy schedules filed in the Bankruptcy Case reflected assets of

11  $842,620.00. (EOR, Tab 36, 412, and Tab 71, 796) Of those assets, $751,000.00 worth

12  was Appellant's residence, which Appellant had purchased back from the bankruptcy

13  estate in the first phase of the Bankruptcy Case; that left less than $100,000.00 in

14  scheduled assets in the Bankruptcy Case. (EOR, Tab 36, 412, and Tab 71, 796)

15  Appellant's bankruptcy schedules reflected $6,050,362.54 in scheduled claims; filed

16  claims in the Bankruptcy Case totaled $1,056,157.72. (EOR, Tab 36, 412, and Tab 71,

17  796) Of the filed claims some had evidently been paid, leaving total claims, of

18  $904,192.72. (EOR, Tab 17, 112-113, 119)

19      Appellee herein was appointed as Chapter 7 Trustee in the Bankruptcy Case on

20  June 20, 2011. (EOR, Tab 3, 8, and Tab 4, 17) Following her appointment as Chapter 7

21  Trustee in the Bankruptcy Case, Appellee reviewed documents and information relating

22  to System 3  (EOR, Tab 4, 18) The precise nature and scope of the estate's rights and/or

23  interests in System 3 were the subject of disputes between Tom J. Wilbert ("Wilbert")

24  and Appellant (EOR, Tab 4, 18)  By a written Purchase and Sale Agreement dated

25  October 12, 2011, however, Appellee agreed to sell all rights, title and interest of the

26  bankruptcy estate in System 3 to Wilbert (EOR, Tab 6, 25-43)

27      Appellant's intent to disrupt and hinder the Bankruptcy Case is well-established

28  in the record, including"Debtor's Notice of Debtor's Intent to Oppose and Object to any

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   Motions and/or Applications Filed in this Case from this Date Forward Unless Debtor

2   Files a Notice of Non-Opposition filed by Appellant in the Bankruptcy Case on October

3   19, 2011. (EOR, Tab 1, 1-2)

4        On October 19, 2011, and October 24, 2011, Appellant served the following

5   discovery directed to Appellee in the Bankruptcy Case (the "Discovery"):

6             a.    Special Interrogatories, Set One;

7             b.    Request for Admissions, Set One;

8             c.    Request for Production, Set One; and,

9             d.    Request for Production, Set Two.

10        The Discovery consisted of sixty-seven (67) Special Interrogatories, sixty-two (62)

11  Requests for Admissions, and seventy-five (75) Requests for Production of Documents

12  and Things (Sets One and Two combined), served on October 19, 2011 (Set One), and

13  on October 24, 2011 (Set Two). (EOR, Tab 38, 420-478)

14        On November 14, 2011, counsel for Appellee sent a letter to Appellant proposing

15  a meet and confer conference regarding the Discovery pursuant to Rule 7026 of the

16  Federal Rules of Bankruptcy Procedure. (EOR, Tab 38, 479-480) Appellant responded

17  by letter dated November 15, 2011, calling Appellee's meet and confer letter

18  disingenuous, and, at least implicitly, rejecting Appellee's proposal. (EOR, Tab 38, 481-

19  483) Appellant sent five other letters to Appellee's counsel, dated November 3, 7, 8 and

20  18, 2011, all "informally" demanding the production of documents from Appellee. (EOR,

21  Tab 21, 213-226, 228-229, 231, and Tab 38, 501-506)

22        For convenience, the information and documents sought by the Discovery are

23  summarized and paraphrased below:

24        **A.    <u>Request for Admissions, Set One</u>.**

25        The Trustee was requested to admit:

26             1.    The Estates/Debtor's non-interest in various business ventures of the

27  Debtor including System 3, 4 Results, Auto and Boat Store, Done Deal and the Luyung

28  Property. (Request for Admissions, Nos. 1-16; EOR, Tab 38, 440-441)

HEFNER, STARK & MAROIS, LLP
Sacramento, California

2.      Various procedural conclusions adverse to the Trustee including that the case should be closed, the lack of need to retain counsel and accountants by the Trustee, lack of compliance with the noticing requirements for ex parte applications and orders on such applications. (Request for Admissions, Nos. 17-25; EOR, Tab 38, 441-442)

3.      That the Debtor did not contribute $300,000.00 to System 3. (Request for Admissions, No. 26; EOR, Tab 38, 442)

4.      That no actual controversy exists between  and the Debtor/Derian Eidson (the Debtor's alleged girlfriend; also criminally indicted for fraud)/Done Deal/David Zinnel (the Debtor's brother)/Thomas Wilbert regarding System 3/Done Deal/4 Results/Auto and Boat Store and the Luyung Property. (Request for Admissions, Nos. 27-57; EOR, Tab 38, 442-445)

5.      That Trustee violated local rules 9014-1, 9022-1 and 7005-1 and specific sub-sections thereof. (Request for Admissions, Nos. 58-62; EOR, Tab 38, 445-446)

**B.    Special Interrogatories, Set One.**

The Trustee was asked to provide the following information in answer to the special interrogatories:

1.      All facts, witness and documents pertaining to each of the Sixty-Two (62) Request for Admissions, Set One, not unqualifiedly admitted.   (Special Interrogatory No. 1; EOR, Tab 38, 427)

2.      All facts, witnesses and writings showing all unadministered property of the estate and the value thereof. (Special Interrogatories, Nos. 2-8; EOR, Tab 38, 427-428)

3.      The identity of "alleged creditors" in this case and their claims, if any, including all facts in support thereof and all supporting writings, witnesses, and the basis for entitlement to recovery on claims if alleged. (Special Interrogatories, Nos. 9-15; EOR, Tab 38, 428-429)

HEFNER, STARK & MAROIS, LLP
Sacramento, California

4.      All facts, documents and witnesses relating to any contention by the Trustee that the Debtor, or the bankruptcy estate, ever had an interest in various identified business ventures including System 3, 4 Results, Auto and Boat Store, Done Deal.  (Special Interrogatories, Nos. 16-39; EOR, Tab 38, 429-431)

5.      All facts, documents and witnesses relating to any contention by the Trustee that the Debtor, or the Bankruptcy Estate, had an interest in the bank accounts of Done Deal, and, if so, all facts, witnesses and writings supporting such contentions. (Special Interrogatories, Nos. 40-45; EOR, Tab 38, 431-432)

6.      All facts, documents and witnesses relating to any contention by the Trustee that the Debtor had an interest in payments and/or property from System 3, or the Luyung Property.  (Special Interrogatories, Nos. 46-57; EOR, Tab 38, 432-433)

7.      All facts, documents and witnesses relating to any contention by the Trustee that the Debtor submitted inaccurate schedules and/or listings of property and/or that the Debtor committed bankruptcy fraud. (Special Interrogatories, Nos. 58-67; EOR, Tab 38, 433-434)

**C.**    **Request for Production of Documents, Set One and Set Two.**

The Trustee was requested to produce the following documents and things:

1.      All documents referred to in answers to interrogatories, Set One. (Request for Production, Nos. 1-22; EOR, Tab 38, 453-455)

2.      All documents referring to filed proofs of claim, the value of the estate property to be administered, evidence of the Debtor's property ownership, and checks issued by System 3, 4 Results, Auto and Boat Store.  (Request for Production, Nos. 23-28; EOR, Tab 38, 455-456)

3.      Conflict waivers between attorney Frank Radoslovich and shareholders of System 3 and certain tax returns pertaining to System 3.  (Request for Production, Nos. 29-30; EOR, Tab 38, 456)

4.      The "Job View" accounting software contained in System 3's system. (Request for Production No. 31; EOR, Tab 38, 456)

1    5.    A specified promissory note identified in a 2006 letter. (Request for

2    Production No. 32; EOR, Tab 38, 456)

3    6.    Michelle Zinnel's "confession" admitting that she (the Debtor's

4    ex-wife) improperly copied part of a patient's file at Gold River Dental and any

5    documents provided to the Appellee by various identified FBI agents and/or the U.S.

6    Attorney's Office and/or Thomas J. Wilbert and/or System 3 and/or attorney Frank

7    Radasolvich since January 2006. (Requests for Production, Nos. 33-39; EOR, Tab 38,

8    456-457)

9    7.    Documents related to Michelle Zinnel's "confession." (Request for

10   Production No. 40; EOR, Tab 38, 470)

11   8.    All tax returns and related documents from System 3 including

12   Internal Revenue Service returns, California returns and returns from New York, New

13   Mexico, Arizona, Colorado, Oklahoma and Texas for the years 2001-2010. (Request for

14   Production, Nos. 41-49; EOR, Tab 38, 470-471)

15   9.    All year end statements relating to balance sheets and income

16   statements for 2001-2010 (and including September 30, 2011) pertaining to System 3,

17   4 Results, Done Deal, Auto and Boat Store. (Request for Production, Nos. 50-57); EOR,

18   Tab 38, 471-472)

19   10.   All stock certificates or "membership units" or any transfer thereof

20   pertaining to System 3, 4 Results, Done Deal or Auto and Boat Sales for the period 2001

21   to the present. (Request for Production, Nos. 58-65; EOR, Tab 38, 472-473)

22   11.   All documents showing ownership of, and shareholder meeting

23   minutes of, System 3, 4 Results, Done Deal and Auto and Boat Sales, for the period 2001

24   to the present. (Request for Production, Nos. 66-73; EOR, Tab 38, 473-474)

25   12.   All W-2 forms since 2001 issued to Thomas Wilbert and Julia

26   Wilbert. (Request for Production, Nos. 74-75; EOR, Tab 38, 474)

27   On November 21, 2011, the Trustee filed a motion for a protective order with

28   respect to the Discovery Requests ("Motion for Protective Order") on the grounds,

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   among others, that the Debtor lacked standing to propound the Discovery. (EOR, Tabs

2   35, 36, 37, 38 and 39)

3      On November 22, 2011, the Bankruptcy Court conducted a hearing on the

4   Trustee's Motion For Order Authorizing Sale Of Assets Re System 3, Inc. Free And

5   Clear Of Any Liens Or Encumbrances, For Approval Of Related Compromises Of

6   Controversies, And For A Finding That Buyer Is A Good Faith Purchaser Pursuant To

7   11 U.S.C. Section 363(m) (the "System 3 Motion"). (EOR, Tab 70)  Appellant took the

8   position in his Supplemental Opposition to the Appellee's System 3 Motion, that he did

9   not own any interest in System 3 because Appellant assigned whatever interest he may

10  have had in System 3 to an entity called Done Deal, Inc., over a year before filing his

11  bankruptcy. (EOR, Tab 17, 117) On the System 3 Motion, the Bankruptcy Court made

12  a factual determination that Appellant was not "adversely and pecuniarily affected by the

13  outcome" of Appellee's motion to sell the bankruptcy estate's interest in System 3.

14  (EOR, Tab 71, 802-803) Based upon that finding, the Bankruptcy Court concluded that

15  Appellant lacked standing to oppose Appellee's motion for approval to sell the

16  bankruptcy estate's interest in System 3. (EOR, Tab 71, 802, 806, 809)  On November

17  28, 2011, the Bankruptcy Court entered its order granting the Appellee's motion for

18  authorization to sell the bankruptcy estate's interest in System 3. (EOR, Tab 41, 514-515)

19     Without a hearing, the Bankruptcy Court denied Appellee's Motion for Protective

20  Order by Civil Minute Order entered on December 30, 2011. (EOR, Tab 55, 686) On

21  January 6, 2012,  Appellee filed a motion for reconsideration of the order denying the

22  Motion for Protective Order on the ground that the Bankruptcy Court's order denying

23  the application for a protective order was clearly erroneous by being inconsistent with

24  the Bankruptcy Court's previous finding concerning Appellant's lack of standing (EOR,

25  Tabs 56, 57 and 58)

26     On January 20, 2012, the Bankruptcy Court entered its order Granting Motion for

27  Reconsideration and Motion for a Protective Order, stating that the court had realized

28  that its earlier denial of the Appellee's application for a protective order "was the

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1    opposite of what it intended to rule in light of the court's ruling that Steven Zinnel lacks

2    standing." (EOR, Tab 62, 704)

3        On January 27, 2012, Appellant filed his Notice of Appeal of the Bankruptcy

4    Court's Order Granting Motion for Reconsideration and Motion for Protective Order.

5    (EOR, Tab 69, 773-774)

6                                    **IV.**

7                        **SUMMARY OF THE ARGUMENT**

8        The Bankruptcy Court properly exercised its discretion by issuing a protective

9    order so Appellee would not be required to respond to the Discovery propounded by

10   Appellant.   The Bankruptcy Court's finding that Appellant was not adversely and

11   pecuniarily affected by the outcome of the motion or related action of Appellee in the

12   Bankruptcy Case was supported by substantial evidence and was not clearly erroneous.

13   Consequently, the Bankruptcy Court's conclusion that Appellant lacked standing to

14   pursue discovery and oppose Appellee's motions was entirely proper.

15                                    **V.**

16                              **ARGUMENT**

17   A.    **Standard of Review.**

18        The entry of a protective order under Federal Rules of Civil Procedure, Rule 26(c),

19   is reviewed on appeal for abuse of discretion.  <u>M & M Med. Supplies & Serv., Inc. v.</u>

20   <u>Pleasant Valley Hosp.</u>, Inc., 981 F.2d 160, 163 (4th Cir. 1993) (en banc).  A court abuses

21   its discretion when it fails to identify and apply the correct legal rule to the relief

22   requested or if its application of the correct  legal standard was (1) illogical, (2)

23   implausible, or (3) without support in inferences that may be drawn from the facts in the

24   record. <u>Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants</u>,

25   661 F.2d 417, 424 (9th Cir. 2011). The reversal of an order for abuse of discretion

26   requires "a definite and firm conviction that the court below committed clear error of

27   judgment in the conclusion it reached upon weighing the relevant factors." <u>In re Popp</u>,

28   323 B.R. 260, 265 (9th Cir. BAP 2005), citing <u>Stine v. Flynn</u> (In re Stine), 254 B.R. 244,

HEFNER, STARK & MAROIS, LLP
Sacramento, California

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1    248 (9th Cir. BAP 2000).

2       A bankruptcy court's grant or denial of a motion for reconsideration is also

3 reviewed for abuse of discretion. In re Basham, 208 B.R. 926, 930 (9th Cir. BAP 1997),

4 aff'd, 152 F.3d 924 (9th Cir. 1998). A bankruptcy court necessarily abuses its discretion

5 if it bases its decision on an erroneous view of the law or clearly erroneous factual

6 findings. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

7       **B.**    **The Bankruptcy Court Correctly Found That Appellant Has No**

8            **Standing to Propound Discovery to Appellee.**

9       A party must establish three elements to obtain constitutional standing. First, the

10 party must have suffered an injury in fact. There must be an invasion of some legally

11 protected interest that is concrete and particularized and not conjectural or hypothetical.

12 Second, the injury in fact must be "fairly . . . trace[able] to the challenged action."

13 Finally, it must be likely, as opposed to merely speculative, that the injury will be

14 redressed by a favorable decision. Id. In addition to these constitutional requirements,

15 a person must be a party in interest to have standing in a bankruptcy case. Lujan v.

16 Defenders of Wildlife, 504 U.S. 555, 560 (1992); see, also, In re Global Indus. Techs.,

17 Inc., 645 F.3d 201, 210-11 (3d Cir. 2011). In the bankruptcy context, an individual or

18 entity must be "aggrieved" by a particular action or course of conduct in order to have

19 standing to oppose it. Derived from the now-repealed Bankruptcy Act of 1898, "this

20 principle, also known as the 'person aggrieved' doctrine, limits standing to persons with

21 a financial stake in the bankruptcy court's order. The Ninth Circuit Court of Appeals has

22 articulated this standard as follows: "Only those persons who are directly and adversely

23 affected pecuniarily by an order of the bankruptcy court have been held to have standing

24 to appeal that order." In re Fondiller, 707 F.2d 441, 442 (9th Cir. 1983); see, also,

25 Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777

26 (9th Cir. 1999).

27       Where an insolvent debtor has no pecuniary interest in the distribution of his

28 assets, he lacks standing to raise an objection to how his assets are distributed among

Zinnel v. Smith
Case No. CIV 2:12-CV-00249-GEB      10      Appellee's Brief
K:\Smith, Susan K\Steven Keith Zinnel (6635-0016)\Appeal (Protective Order)\pldg appeal brief.wpd

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   his creditors and lacks standing to bring an appeal. <u>Willemain v. Kivitz</u>, 764 F.2d 1019

2   (4th Cir. 1985). Thus, debtors only have standing to object to claims where there is 'a

3   sufficient possibility' of a surplus to give them a pecuniary interest. <u>Heath v. Am.</u>

4   <u>Express Travel Related Servs. Co.</u> (In re Heath), 331 B.R. 424 , 429 (9th Cir. BAP 2005).

5        A litigant's standing is an aspect of jurisdiction, and courts generally require the

6   proponent of federal jurisdiction to establish the jurisdictional facts by competent proofs.

7   See, <u>McNutt v. General Motors Acceptance Corp. of Ind., Inc.</u>, 298 U.S. 178, 189 (1936)

8   ("If his allegations of jurisdictional facts are challenged by his adversary in any

9   appropriate manner, he must support them by competent proof."); <u>In re Rake</u>, 363 B.R.

10   146, 151 (Bankr. D. Idaho 2007) (debtor must support standing by offering evidence of

11   a "reasonable possibility" of pecuniary interest, citing <u>Cult Awareness Network, Inc. v.</u>

12   <u>Martino</u> (In re Cult Awareness Network, Inc.), 1997 U.S. Dist. LEXIS 8454 (N.D.

13   Ill.1997); and <u>Morlan v. Universal Guaranty Life Ins. Co.</u>, 298 F.3d 609, 620 (7th Cir.

14   2002) (noting the "probabilistic character" of the standing requirement).   The party

15   asserting standing bears the burden of proof. <u>Spenlinhauer v. O'Donnell</u>, 261 F.3d 113,

16   118-19 (1st Cir. 2001).

17        In response to Appellant's motion for a protective order in the Bankruptcy Case,

18   Appellant failed to produce evidence that he had a pecuniary interest in the outcome of

19   the motion or that he would be adversely affected thereby. Moreover, the Bankruptcy

20   Court's finding that Appellant was not adversely and pecuniarily affected by the outcome

21   of Appellee's motion was based upon substantial evidence. In making that determination,

22   the Bankruptcy Court specifically noted on the record that it considered (a) the

23   declaration of certified public accountant Gene Gonzales regarding the deteriorating

24   financial performance of System 3; (b) that none of Appellant's creditors opposed the

25   motion; (c) the questionable likelihood that the bankruptcy estate would realize

26   substantial revenue in the absence of a sale because the buyer, Mr. Wilbert, might not be

27   committed to operate the company if he was unable to complete the purchase; and, (d)

28   the substantial cost and risk of the expected litigation over the bankruptcy estate's

possible interest in System 3 if no sale occurred. (EOR, Tab 71, 803-805) In contrast to the lack of material evidence presented by Appellant, Appellee submitted substantial admissible evidence in support of Appellant's motion, including Appellant's declaration (in which she testified that she had reviewed various documents and issues in negotiating the proposed sale), and the aforementioned declaration of Appellant's retained accounting expert, Gene Gonzales. Appellant's motion set forth in detail the basis for the decision to sell the purported interest in System 3 for the proposed sale price (EOR, Tab 3, 7-16). Based on Appellee's motion and supporting evidence, the Bankruptcy Court concluded that the sale of the bankruptcy estate's interest in System 3, if any, for $350,000.00 as proposed by Appellee was fair and equitable. (EOR, Tab 71, 805) As other assets of less than $100,000.00 were disclosed, and since the acknowledged creditor's claims in Appellant's bankruptcy proceeding were in excess of $900,000.00, the Bankruptcy Court was completely justified in finding that there was not a reasonable possibility that Appellant's case would result in a surplus so as to confer standing on Appellant's part.

At pages 28-33 of his brief, Appellant finally discusses the standing issue that was the basis for the Bankruptcy Court's ruling on Appellee's motion for a protective order. Distilling Appellant's argument to its essence, Appellant appears to suggest that the Bankruptcy Court applied an incorrect legal standard, and, (b) even if the correct legal standard was applied, it was applied incorrectly. Appellant is wrong on both counts.

Appellant first contends that he has standing to propound the discovery in question, oppose Appellee's motion for a protective order, and appeal the Bankruptcy Court's ruling on that motion, because he is a "party in interest." Appellant's argument in this regard relies on general language in a couple of cases decided by district courts approximately a century ago. In other portions of his brief, however, Appellant seems to acknowledge that the modern rule (and certainly the rule for bankruptcy courts in the Ninth Circuit) is that a person must establish that he or she will be adversely and pecuniarily affected by the outcome of the subject motion or other proceeding to have

HEFNER, STARK & MAROIS, LLP
Sacramento, California

standing to oppose it. In that regard, Appellant's primary contention on this appeal is that his bankruptcy estate is likely to generate a surplus because he "will be objecting to most if not all of the filed creditor claims." Appellant's argument is clearly incorrect; if he lacks standing, he has no right to object to creditor's claims. Bankruptcy case law is quite consistent on this point. See, e.g. In re Coleman (1991, BC ND Tex) 131 BR 59; In re Lapointe (1984, BC WD Ky) 39 BR 80; In re I & F Corp. (1998, BC SD Ohio) 219 BR 483.   Having failed to present any substantial evidence that there is a reasonable possibility that there will be a surplus in this Bankruptcy Case, Appellant lacks standing to oppose and interfere with the legitimate actions of Appellee to administer the assets of the bankruptcy estate.  For purposes of this appeal, that means that Appellant does not have the right to propound discovery to inquire about matters in which he has no legitimate stake.

Appellant also contends that he was entitled to conduct discovery because there was uncertainty whether Appellee had an interest in System 3. Again, this argument misses the mark as, whatever the outcome might be of that line of inquiry, Appellant would have no financial or other stake in the result. If the bankruptcy estate actually had no ownership rights in System 3, the sale proceeds would provide a complete windfall to the bankruptcy estate and its creditors. Even so, the evidence before the Bankruptcy Court supported a reasonable inference that such a result would not have come close to generating a surplus in Appellant's bankruptcy. On the other hand, if the bankruptcy estate had any ownership rights in System 3, the Bankruptcy Court concluded, based on substantial evidence, that the sale price of $350,000.00 for the estate's potential interest was fair and equitable under all of the relevant circumstances. Again, that result did not create a reasonable possibility that Appellant's bankruptcy proceeding would return a surplus to him. Put simply, the Bankruptcy Court's finding that Appellant lacked standing was in no way an abuse of the court's discretion - the finding was not at all illogical, implausible or without support in inferences that could be drawn from the facts in the record.

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1  Appellant cites In re Popp, supra, 323 B.R. 260, 265, and In re Rodeo Canon
2  Development Corp., 362 F.3d 603 (9th Cir. 2004), for the proposition that the Bankruptcy
3  Court was required to determine whether the bankruptcy estate had an interest in System
4  3 before approving a sale to Mr. Wilbert. Therefore, Appellant apparently argues, he had
5  the right to investigate that issue through the Discovery.  Appellant's reliance on the
6  aforementioned cases is misplaced, however, as Appellee had the right to and did
7  "quitclaim" whatever interest the estate had in System 3 to the buyer without the need
8  for an adversary proceeding in the Bankruptcy Case. Where the buyer knows of an
9  ownership dispute concerning the sale property, knows the sale terms, knows it would
10 receive the property without warranty as to title, and knows the estate could possibly
11 have no ownership interest in the sale property, the trustee may be authorized to sell
12 whatever interest the estate has - even if that interest is nothing - to a buyer with full
13 knowledge of the situation. In re Popp is clearly distinguishable as that case involved an
14 attempt to sell fee interest in the sale property.  With respect to In re Rodeo, the Ninth
15 Circuit withdrew that opinion on March 8, 2005. See, In re Rodeo Canon Dev. Corp.,
16 126 Fed.Appx. 353 (9th Cir. 2005).

17  Appellant also relies on In re Kazis, 257 B.R. 112 (Bankr. D. Mass. 2001) to argue
18 that he is entitled to obtain discovery as a "party in interest." That case did not involve
19 the debtor's right to pursue discovery, but was a dispute between a Chapter 7 trustee and
20 the debtor over which party should operate the debtor's business in closing out the
21 bankruptcy.  Moreover, there was no question in that case about there being a surplus in
22 the bankruptcy estate, as the bankruptcy court stated:

23       In this case all parties agree that there will likely be assets returned to the
         Debtor under 11 U.S.C. § 726(a)(6). The Debtor in this case is therefore
24       clearly a party in interest as the holder of some amount of unencumbered
         equity in the inventory.
25

26 Id. at 114. The situation is clearly different in this case. Other than reference to mere
27 allegations in the criminal case pending against him as to the purported value of the
28 System 3 interest that Appellant appears to have acknowledged he no longer owned,

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   Appellant presented no basis upon which the Bankruptcy Court could have concluded

2   that the sale or other disposition of the System 3 interest was likely to result in a surplus

3   to the bankruptcy estate after paying creditors' claims. The allegations in the criminal

4   case are just that - allegations. They are not evidence. Appellant's pure speculation that

5   there could be surplus funds in the bankruptcy estate does not confer standing. The

6   Seventh Circuit Court of Appeals, in In re Stinnett 465 F.3d 309 (7th Cir. 2006),

7   addressed a situation in which the debtor, the IRS, and the Chapter 7 bankruptcy trustee

8   disputed whether the debtor's long term disability insurance payments were property of

9   the estate and, if so, who had standing to object to an IRS tax lien on those insurance

10  proceeds. In re Stinnett, supra, 465 F.3d at 311-12, and 315-316. The bankruptcy court

11  found that the payments were property of the estate, and the District Court and Court of

12  Appeals affirmed. Id. at 312-313.

13      The Debtor in In re Stinnett further challenged the District Court's order that an

14  IRS tax lien attached to the insurance proceeds. Id. at 315. The Court of Appeals found

15  the Debtor had no standing to challenge that order, first concluding that the debtor, under

16  Indiana law, was entitled to exempt $6,000.00 per month of the over $20,000.00 a month

17  in insurance proceeds, with the remainder considered to be property of the bankruptcy

18  estate. Id. at 313-315. Finding that the debtor had no standing to contest the IRS tax

19  lien, the court reasoned:

20      'Bankruptcy standing is narrower than Article III standing. To have
        standing to object to a bankruptcy order, a person must have a pecuniary
21      interest in the outcome of the bankruptcy proceedings. Only those persons
        affected pecuniarily by a bankruptcy order have standing to appeal that
22      order. Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary
        interest because no matter how the estate's assets are disbursed by the
23      Appellee, no assets will revert to the debtor.

24      . . . .

25      . . . If the debtor can show a reasonable possibility of a surplus after
        satisfying all debts, then the debtor has shown a pecuniary interest and has
26      standing to object to a bankruptcy order.'

27  Id. at 315, citing In re Cult Awareness Network, Inc., 151 F.3d 605, 607-08 (7th Cir.

28  1998) (citations omitted).

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1    The Court of Appeals noted that the Chapter 7 petition listed assets in the amount

2    of $394,530.00 and liabilities in the amount of $4,495,420.00, and observed that

3    creditors would not be paid one hundred percent (100%), there would be no surplus

4    remaining after creditors' claims were paid, and the debtor, therefore, had "no reasonable

5    possibility of emerging from Chapter 7 with any estate property." Id. at 315-316. The

6    court concluded: "In the absence of a reasonable possibility of a claim to the assets of the

7    estate, [the debtor] has no standing to challenge the district court's decision and order on

8    the IRS tax lien." Id. at p. 316.

9        As in Stinnett, the Bankruptcy Court here concluded that Appellant has no

10   reasonable possibility of receiving surplus estate property at the conclusion of the case.

11   The Proofs of Claims filed in the case total not less than $1,056,157.72 as of November

12   18, 2011.  According to Appellant's own calculations, as set forth in his Supplemental

13   Opposition to the Appellee's System 3 motion, the filed claims in the case total not less

14   than $904,192.72, not including interest to which these claimants may be entitled under

15   11 U.S.C. Section 726(a)(5), and not including administrative claims which will be

16   substantial due to the Debtor's conduct to date and his promised future opposition to

17   anything and everything requested or proposed by Appellee in the Bankruptcy Case.

18       As set forth in Appellee's motion for a protective order, Appellant's Bankruptcy

19   Schedules listed assets totaling less than $842,620.00, $751,000.00 of which was

20   attributed to his personal residence. Appellant's residence is no longer property of the

21   estate, however, having been sold back to Appellant in round one of the Bankruptcy

22   Case.  The debts shown on the Bankruptcy Schedules totaled $6,050,362.54.  With

23   respect to a possible interest in System 3 as an asset of the bankruptcy estate, Appellant

24   took the position in his Supplemental Opposition to the Appellee's System 3 Motion,

25   that he did not own any interest in System 3 because he assigned whatever interest he

26   may have had in System 3 to an entity called Done Deal, Inc., over a year before filing

27   his bankruptcy.  For Appellant to complain that $350,000.00 was inadequate for the

28   System 3 interest that Appellee sought to sell through her System 3 Motion, was and is

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1    specious. Appellant cannot have it both ways. His very argument reveals his lack of

2    standing to challenge the proposed sale and to conduct discovery to purportedly evaluate

3    that transaction. Put simply, if an ownership interest in System 3 was not property of

4    Appellant's bankruptcy estate, Appellant cannot logically assert that the Bankruptcy

5    Case is likely to be a surplus case.

6    **C.    The Bankruptcy Court Properly Reconsidered Its Order On the**

7    **Motion for Protective Order Pursuant To Federal Rule Of Bankruptcy**

8    **Procedure 9023.**

9        There are three grounds justifying reconsideration of a prior order or judgment

10   under Rule 9023: "1) a manifest error of fact; 2) a manifest error of law; or 3) newly

11   discovered evidence." In re Pruitt, 319 B.R. 646, 647 (Bankr. S.D. Cal. 2005)(citing In

12   re Captain Blythers, Inc., 311 B.R. 530, 539 (9th Cir. BAP 2004)). Rule 9023 makes

13   Rule 59(e) of the Federal Rules of Civil Procedure applicable in bankruptcy cases. Rule

14   59(e) authorizes the filing of a motion to alter or amend a judgment not later than 14

15   days after entry of the judgment. In the Ninth Circuit, "a motion for reconsideration

16   should not be granted, absent highly unusual circumstances, unless the district court is

17   presented with newly discovered evidence, committed clear error, or if there is an

18   intervening change in the controlling law." Kona Enters., Inc. v. Estate of Bishop, 229

19   F.3d 877, 890 (9th Cir. 2000) (quoting 389 Orange Street Partners v. Arnold, 179 F.3d

20   656, 665 (9th Cir. 1999)). Reconsideration also may be granted "as necessary to prevent

21   manifest injustice." Navajo Nation v. Confederated Tribes & Bands of the Yakima

22   Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

23       On appeal, a District Court will overturn the bankruptcy judge's decision to grant

24   a motion for reconsideration only if the District Court has a definite and firm conviction

25   that the bankruptcy judge committed a clear error of judgment. A court abuses its

26   discretion if it incorrectly applies the law or bases its decision on a clearly erroneous

27   finding of fact. Marchand v. Mercy, 22 F.3d 933, 936 (9th Cir. 1994). In this case,

28   there has been no showing that the Bankruptcy Court incorrectly applied the law or

HEFNER STARK & MAROIS, LLP
Sacramento, California

1    based its decision on a clearly erroneous finding of fact.

2        Here, Appellee's request for reconsideration of the initial denial of her motion for

3    a protective order was based upon the clear error committed by the Bankruptcy Court

4    in view of the determination it had reached on the System 3 Motion.  At the hearing on

5    that motion, the Bankruptcy Court found that Appellant had failed to establish that he

6    had a sufficient pecuniary interest to confer standing in the Bankruptcy Case.  (EOR,

7    Tab 71, 803)  Although the same issue was squarely before the Bankruptcy Court on

8    Appellee's Motion for a Protective Order, the Bankruptcy Court denied that motion

9    without explanation and without a hearing.  Concluding that the Bankruptcy Court had

10   simply made an error in denying the Motion for a Protective Order, Appellee moved for

11   reconsideration.

12       The hearings on Appellee's motion to sell the estate's interest in System 3, on

13   Appellant's various motions concerning the employment of professionals, and for

14   sanctions against Appellee and her professionals for conduct in connection with seeking

15   authorization to employ those professionals, were held on November 22, 2011.  (EOR,

16   Tab 71, 786-813)  Appellee notes that after Appellee filed her System 3 Motion, but

17   before the hearing, Appellant filed an emergency ex parte application to continue the

18   hearing on that sale motion, arguing, among other things, that the discovery responses

19   were necessary to his evaluation of the System 3 Motion.  (EOR, Tabs 30, 31, 32 and

20   33)  Appellant even argued, at least with respect to the document production requests

21   related to System 3, that those requests were propounded for the purpose of evaluating

22   Appellee's System 3 Motion  - even though that motion was not filed until *after* the

23   discovery was propounded.  At the November 22, 2011, hearing, the Court concluded

24   that Appellant has not established legal standing in this case to oppose and object to

25   Appellee's motions in that he is not pecuniarily or adversely affected.  (EOR, Tab 71,

26   802)  For the same reason, Appellant did not have standing to propound the discovery

27   which was the subject of the Motion for Protective Order.

28       The Bankruptcy Court's order denying Appellee's Motion for Protective Order

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1  was inconsistent with its earlier conclusion of law concerning Appellant's lack of
2  standing.  As noted in Appellee's pleadings in support of her Motion for Protective
3  Order, there were no matters contested by a party with standing supporting Appellant's
4  discovery at the time it was propounded.

5  **D.**    **Even if Appellant Had Standing, The Issuance of the Protective Order**
6  **Was Proper on Other Grounds.**

7           1.    Appellant's Discovery Was Improper Because No Contested Matter
8  Was Pending.

9           Even if Appellant had standing to propound the Discovery, it was improper
10 because no contested matter was pending at the time Appellant served those requests.
11 Rule 9014(c) of the Federal Rules of Bankruptcy Procedure states, in pertinent part, as
12 follows:

13     Except as otherwise provided in this rule, and unless the court directs
       otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026,
14     7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071.
       ...
15

16 The impact of this rule is that discovery is permissible in connection with
17 contested matters.  At the time of service of the Discovery by Appellant, there were no
18 pending contested matters in the Bankruptcy Case.  While the Debtor had previously
19 filed a number of motions and other papers before first serving Set One of his Discovery
20 on October 19, 2011, nothing was contested at that time. In Appellee's Motion for
21 Protective Order, Appellee itemized the matters that were on file at the time of service
22 of Set One of the Discovery, which matters included the following:

23           a.    A motion to reconsider the reopening of the case (June 27, 2011).

24           b.    Debtor's Notice of Intent to File Opposition to Bankruptcy Appellee's
25 Motion to Employ Hefner, Stark & Marois, LLP as Counsel for Appellee filed on July
26 7, 2011 and Request for Hearing (July 11, 2011).

27           c.    Motion to Reconsider Application to Employ Hefner, Stark &
28 Marois, LLP (July 27, 2011).  (Docket No. 233) (motion denied September 8, 2011)

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1            d.     Notice of Appeal of the Order the Order Granting Appellee Susan

2    K. Smith's Application to Employ Hefner, Stark & Marois, LLP as Counsel for

3    Appellee (September 22, 2011).

4            e.     Notice of Appeal of the Order Denying Reconsideration of the

5    Granting of the Application to Employ Hefner, Stark & Marois, LLP (September 22,

6    2011).

7            f.     Opposition to Motion to Employ Gonzales and Sisto, LLP as

8    Accountants (September 26, 2011 - motion granted September 27, 2011)

9            g.     Motion for Reconsideration of Order Granting Bankruptcy

10   Appellee's Application for Authorization to Employ Gonzales and Sisto, LLP as

11   Accountants for the Chapter 7 Appellee (October 11, 2011).

12           h.     Debtor's Notice of Intent to Oppose and Object to any Motion and/or

13   Applications Filed in this Case from this Date Forward Unless Debtor Files a Notice of

14   Non-Opposition (October 19, 2011).

15           i.     Motion/Application for (1) Leave of Court to Utilize the Court's

16   Electronic Case File (ECF) System to Receive Notice of Filings and Order

17   Electronically and Permit Debtor to Electronically File Documents in this Case (2)

18   Court Assessed Monetary and Non-Monetary Sanctions Against Acting United States

19   Appellee, Region 17, August B. Landis, Appellee Susan K. Smith, and their Attorneys

20   of Record (October 19, 2011).  (EOR, Tab 36, 413-414)

21       <u>None of these matters constituted contested matters to support formal discovery</u>.

22   All of the filings were related to, or arose out of, Appellant's various challenges to the

23   reopening of the Bankruptcy Case, to the applications to employ Appellee's

24   professionals, and for sanctions, none of which created "contested" matters for purposes

25   of discovery at the time of filing.  It is well established that debtors in bankruptcy are

26   not entitled to notice of applications to appoint professionals. 11 U.S.C. section 327 and

27   Federal Bankruptcy Rule 2014 do not require notice to employ professionals.

28   Accordingly, the appointment of professionals is not a proceeding subject to "contest"

HEFNER, STARK & MAROIS, LLP
Sacramento, California

Zinnel v. Smith
Case No. CIV 2:12-CV-00249-GEB          20        Appellee's Brief
K:\Smith, Susan K\Steven Keith Zinnel (6635-0016)\Appeal (Protective Order)\pldg appeal brief.wpd

in terms of Local Rule 9014.  See In re Crest Door, 57 B.R. 830 (9th Cir. BAP 1986) (noticed hearing on application to employ a financial consultant could be ordered but is not required); In re Arochem Corporation, 181 B.R. 693 (Bkrtcy. D. Conn. 1995) (Appellee not required to serve notice on any party of his request for approval of attorney employment).  This same reasoning applies to a motion requesting sanctions based on failure to provide notice of the application to employ a professional.

Moreover, Appellee's System 3 Motion was not filed and served by Appellee until October 25, 2011, a date after Appellant's service of both sets of his Discovery. Accordingly, there was no contested matter pending regarding the System 3 Motion at the time the Debtor served his Discovery.  For this reason as well, therefore, the Discovery was improper even if Appellant had standing to propound it.

     2.   <u>Good Cause Existed to Issue a Protective Order Where the Information and Documents Sought are Irrelevant, Oppressive, and Burdensome to Produce</u>

As a separate and independent basis for a protective order, the Bankruptcy Court has broad discretion to issue a protective order and should have done so in this case to prohibit Appellant's inquiry into irrelevant, overly broad information, or that which is unduly burdensome to produce.  Federal Rule of Bankruptcy Procedure 7026(c)(1) provides in pertinent part that:

> A party or any person from whom discovery is sought may move for a protective order in the Court where the action is pending - or as an alternative on matters relating to a deposition, in the Court for the District where the deposition will be taken... the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including one or more of the following:
>
> (A)  forbidding the disclosure or discovery;
> (B)  specifying terms, including time and place, for the disclosure or discovery;
> ...
> (D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> ...
> In deciding whether good cause exists to issue a protective order limiting

HEFNER, STARK & MAROIS, LLP
Sacramento, California

Zinnel v. Smith
Case No. CIV 2:12-CV-00249-GEB     21     Appellee's Brief
K:\Smith, Susan K\Steven Keith Zinnel (6635-0016)\Appeal (Protective Order)\pldg appeal brief.wpd

discovery, the court must balance the interests involved.  In other words, the court must weigh the "harm to the party seeking the protective order" against "the importance of the disclosure to the non-moving party." Beloit Liquidation Trust v. Century Indemnity Co., 2003 U.S. Dist. LEXIS 2082 at *8 (N.D. Ill. February 13, 2003); see also Phillips v. General Motors Corporation, 307 F.3d 1206, 1211-1212 (9th Cir. 2002).  Here, good cause clearly existed because the information sought is not relevant, is oppressive, and is burdensome to produce.

The court may deny discovery where the information sought is simply too remote to any matter involved in the case: "While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, et al., 103 F.3d 1007, 1012-1013 (D.C. Cir. 1997) (internal quotes omitted) [discovery dispute arose out of abuse of process case and court failed to see any reasonable likelihood that allowing discovery of nonparty unions' documents would lead to discovery of evidence relevant to the underlying action]. "[W]hen the requests approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought." Carlson Cos., Inc. v. Sperry and Hutchinson Co., 374 F.Supp. 1080, 1088 (D. Minn. 1973).  Thus, discovery is constrained by relevance.

Appellant did not provide any evidence or facts to show that the information sought was reasonably calculated to lead to relevant evidence bearing on any contested matter then pending before the court.  While the standard of relevance in the context of discovery is broader than in the context of admissibility, this "should not be misapplied so as to allow fishing expeditions in discovery.  Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to

HEFNER, STARK & MAROIS, LLP
Sacramento, California

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1    produce a variety of information which does not reasonably bear upon the issues in the

2    case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992).

3        Thus, even if Appellant had standing and even if there was a contested matter

4    pending when the Discovery was served, the Discovery went far beyond what is

5    permissible under the applicable local rules and federal law. The Bankruptcy Court was

6    completely justified to preclude the Discovery on such grounds.

7                                        **VI.**

8                            **CONCLUSION**

9        The Bankruptcy Court did not abuse its discretion in issuing a protective order

10    to preclude Appellant from pursuing discovery from Appellee. The Bankruptcy Court's

11    determination that Appellant lacks standing in the Bankruptcy Case was amply

12    supported by the evidence and was a proper basis upon which to have issued the

13    protective order. Further, other grounds clearly existed for issuance of a protective

14    order. Based on Appellant's lack of standing as properly determined by the Bankruptcy

15    Court, the improper nature of the Discovery and its lack of relevance, as well as its

16    burdensome nature, it is respectfully requested that the Bankruptcy Court's order

17    granting Appellee's motion for a protective order be affirmed.

18                                   Respectfully Submitted,

19

20    Dated: May 15, 2012                  HEFNER, STARK & MAROIS, LLP

21

22                                By

23                                Howard S. Nevins, Attorneys for SUSAN
                                       K. SMITH, Chapter 7 Trustee

24

25

26

27

28

Zinnel v. Smith
Case No.  CIV 2:12-CV-00249-GEB        23        Appellee's Brief
K:\Smith, Susan K\Steven Keith Zinnel (6635-0016)\Appeal (Protective Order)\pldg appeal brief wpd

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed, R. App. P, 32(a)(7)(B) because:

[ X ]   this brief contains 8,118[ words state the number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]   this brief uses a monospaced typeface and contains [state the number of lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)].

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ]   this brief has been prepared in a proportionally spaced typeface using WordPerfect X3 in [Times New Roman font 14, or

[ ]   this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: May 15 , 2012          HEFNER, STARK & MAROIS, LLP

By  _____
Howard S. Nevins, Attorneys for
SUSAN K. SMITH, Chapter 7 Trustee

HEFNER, STARK & MAROIS, LLP
Sacramento, California