UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN KEITH ZINNEL,<br><br>    Appellant,<br>v.<br>SUSAN K. SMITH,<br><br>    Appellee. | No.  2:12-cv-00249-TLN<br><br>**MEMORANDUM AND ORDER** |

The matter is before the Court pursuant to Appellant Steven Zinnel's appeal of the bankruptcy court's January 20, 2012 order: 1) granting Appellee & Trustee Susan K. Smith's motion for reconsideration of the court's previous order denying her motion for a protective order; and 2) granting Appellee & Trustee's motion for a protective order.  As to both, for the reasons discussed below, the order of the bankruptcy court is AFFIRMED.

**I.    Background**

Appellant summarizes his appeal as follows: "Debtor appeals from a January 20, 2012 order granting a discovery protective order which essentially erroneously finds that debtor does not have standing to conduct discovery or obtain a single document from the bankruptcy trustee which he needs in order for him to effectively participate in an adversarial case to which he is the

only party and there is obviously something rotten in the state of Denmark."[1] (Appellant's Opening Brief, ECF No. 12 at 6.)

As stated by Appellee: Appellant commenced the instant bankruptcy case with the filing of a voluntary Chapter 7 petition, on July 20, 2005. The case was closed thereafter, but was ordered reopened on June 17, 2011, following application of the Office of the United States Trustee ("UST"). The UST's application was based on the criminal indictment filed against Appellant, which led to the jury trial before this Court on charges related to bankruptcy crimes, and which resulted in Appellant's conviction. *See* Case No. 2:11-cr-234-TLN. (Appellee's Opening Brief, ECF No. 17 at 7.)

According to Appellee, Appellant's bankruptcy schedules in the bankruptcy case reflected assets of $842,620.00. Of those assets, $751,000.00 was Appellant's residence, which Appellant had purchased back from the bankruptcy estate in the first phase of the bankruptcy case; that left less than $100,000.00 in scheduled assets in the Bankruptcy case. Appellant's bankruptcy schedules reflected $6,050,362.54 in scheduled claims; filed claims in the bankruptcy case totaled $1,056,157.72. Of the filed claims some had been paid, leaving total claims of $904,192.72. (ECF No. 17 at 7.)

Appellee was appointed as Chapter 7 bankruptcy Trustee in the bankruptcy case, on June 20, 2011. In that role, Appellee reviewed documents and information relating to System 3, Inc. (hereinafter "System 3"). (ECF No. 17 at 7.) The nature and scope of the estate's rights and/or interests in System 3 were the subject of disputes between Tim J. Wilbert and Appellant. By a written Purchase and Sale Agreement dated October 12, 2011, Appellee agreed to sell all rights, title and interest of the bankruptcy estate in System 3 to Wilbert. (ECF No. 17 at 7.)

On October 19, 2011, and October 24, 2011, Appellant served the following discovery directed to Appellee: 67 special interrogatories, 62 requests for admissions, and 75 requests for production of documents and things. (ECF No. 17 at 8.) On November 21, 2011, the Trustee filed a motion for a protective order with respect to the discovery requests, on grounds including

---

[1] *See Hamlet*, William Shakespeare, Act 1, Scene 4.

that Appellee lacked standing to propound discovery.  On November 22, 2011, the Bankruptcy Court conducted a hearing on Appellee's motion for an order authorizing the sale of System 3.[2]  (ECF No. 17 at 12.)

At that hearing, the Bankruptcy Court made a factual determination that Appellant was not "adversely and pecuniarily affected by the outcome" of Appellee's motion to sell the bankruptcy estate's interest in System 3.  (Excerpt of Record "EOR", Tab 71 at 802–03.)  Based upon that finding, the bankruptcy court concluded that Appellant lacked standing to oppose Appellee's motion for approval to complete the sale.  On November 28, 2011, the bankruptcy court entered its order granting Appellee's motion for authorization to complete the sale.  (ECF No. 17 at 12.)

Without a hearing, on December 30, 2011, the bankruptcy court denied Appellee's motion for a protective order.  On January 6, 2012, Appellee filed a motion for reconsideration of the order denying the motion for protective order, on the grounds that the court's denial was "clearly erroneous" because it was inconsistent with the court's finding that Appellant lacked standing to oppose Appellee's motion for approval to sell System 3.  (ECF No. 17 at 12.)

On January 20, 2012, the bankruptcy court entered its order granting Appellee's motion for reconsideration, stating that the Court had realized that its earlier denial of Appellee's application for a protective order "was the opposite of what it intended to rule in light of the court's ruling that Steven Zinnel lacks standing." (EOR, Tab 62 at 704.)  On January 30, 2012, Appellant filed the instant notice of appeal of the bankruptcy court's order granting Appellee's motion for reconsideration and granting the protective order.  (EOR, TAB 69 at 773.)

## II. Procedural History

Appellant filed his opening brief in this matter on May 2, 2012.  Appellee filed her opening brief on May 16, 2012.  Appellant filed a reply brief on May 30, 2012.  On March 28, 2013, the matter was stayed by order of this Court, pending the resolution of Appellant's criminal

---

[2] It appears the hearing covered the following: Appellee's motion for an order authorizing the sale of System 3 and/or for approval of related compromises of controversies, and for a finding that the buyer of System 3 was a good faith purchaser; Appellant's objections to the employment and declaration of Gene A. Gonzalez; and Appellant's motion to use the electronic case file system.  (ECF No. 17 at 12; EOR, Tab 71 at 788.)

1  proceedings, Case No. 11-cr-234-TLN.  Appellant was convicted in the criminal matter, on July
2  16, 2013, and sentenced on March 4, 2014.  On July 9, 2015, the stay was lifted and this matter
3  was submitted without oral argument.

### III.  Standard of Review

"The questions of law presented by this appeal are subject to de novo review. *In re American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir. 1984) (bankruptcy court's conclusions of law are subject to de novo review); *see also In re Castlerock Properties,* 781 F.2d 159, 161 (9th Cir. 1986) (questions of bankruptcy court's jurisdiction are reviewed de novo)." *Matter of Lockard*, 884 F.2d 1171, 1174 (9th Cir. 1989).  "Findings of fact by the bankruptcy judge shall not be disturbed unless they are clearly erroneous." *Matter of Universal Life Church, Inc.*, 191 B.R. 433, 437 (E.D. Cal. 1995).

The parties agree that the standard of review of the bankruptcy court's decision to grant the protective order is an abuse of discretion standard.  (ECF No. 12 at 12; ECF No. 17 at 13.) *See Qualls By & Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (citing *Ashton–Tate v. Ross,* 916 F.2d 516, 519 (9th Cir. 1990)) (The Ninth Circuit "review[s] for abuse of discretion a district court's decision not to permit further discovery").  A bankruptcy court's grant or denial of a motion for reconsideration is also reviewed for abuse of discretion.  *In re Basham*, 208 B.R. 926, 930 (9th Cir. BAP 1997) (citing *In re Watson,* 192 B.R. 739, 745 (9th Cir. BAP 1996).

### IV.  Analysis

A. Appellee's motion for reconsideration

At the outset, this Court reframes the issue before the Court simply as whether the bankruptcy court erred in granting the protective order which halted Appellant's discovery requests.  To recap: on November 22, 2011, the bankruptcy court determined at the hearing on Appellee's motion to sell System 3 that Appellant lacked standing to challenge that sale. Following that hearing and the court's order approving the sale, the court summarily denied Appellee's motion for a protective order on December 30, 2011.  Appellee moved for reconsideration of that order.  On January 20, 2012, the bankruptcy court entered its order

1  granting that motion for reconsideration, stating that the court had realized that its ruling "was the
2  opposite of what it intended to rule in light of the court's ruling that Steven Zinnel lacks
3  standing." (EOR, Tab 62 at 704.)

The clearest interpretation of the bankruptcy court's decision to grant the motion for reconsideration is just what the bankruptcy court stated: that it had intended to grant the protective order and subsequently realized that the summary ruling it actually issued was the opposite of that intent. This Court finds that the bankruptcy court's decision to reconsider its order was not an abuse of discretion. Therefore, to the extent that Appellant seeks to overturn the bankruptcy court's motion for reconsideration, the appeal is DENIED.[3]

The Court now turns to the main issue on this appeal or whether, ultimately, the bankruptcy court erred in granting the protective order preventing Appellant's further discovery.

B.  <u>Appellee's motion for a protective order</u>

Appellant appeals the bankruptcy court's order excusing Appellee from responding to Appellant's discovery requests, which included discovery relevant to System 3. The instant appeal is not of the court's order approving the sale of System 3. However, the court's analysis in approving the sale of System 3 appears to be the basis for ultimately precluding Appellant's discovery requests; the court determined at the Nov. 22, 2011, hearing regarding the sale that Appellant had not shown he had an ownership interest in System 3, was not a party in interest to that sale, and thus lacked standing to contest the sale. (EOR, Tab 71 at 802–03; Tab 62 at 704.) Accordingly, this Court looks to the bankruptcy court's determination, in approving the sale of System 3, that Appellant was not a party in interest with standing to challenge the sale.

At the Nov. 22, 2011, hearing, the following exchange took place:

> COURT:  If I understand it correctly here, the trustee – this case, of course, was filed on July 20th, 2005. It was reopened on June 17, 2011, to deal with assertions that there was property that had not been scheduled in the case.
>
> And the assets that the trustee wishes to sell are all the contractual

---

[3] For example, the grounds on which Appellant now appeals would not be available if the bankruptcy court had simply issued an amended ruling.

rights, title, and interest that the estate may own or have the right to enforce under and pursuant to the Business Formation Agreement entered into between Tom J. Wilbert and Steve K. Zinnel and David P. Zinnel with an effective date of October 3, 2011,[4] and all rights related to System 3, Incorporated …

And the trustee has received an offer of $350,000 from Tom Wilbert, who, it has been asserted, has been operating System 3 supposedly as the sole owner and manager.

…

And so the trustee views this as a compromise of controversy, the controversy being what is the estate's interest, if any. And the trustee agrees to in effect, with the compromise, in agreeing, in exchange for a payment of money, to relinquish whatever rights, if any, the trustee has in these assets.

It's possible that the trustee has no rights whatsoever, and it's possible that the trustee owns them … So this one-time $350,000 does not determine who actually owns System 3 and its relating things to the extent it is merely the trustee relinquishing any right to claim the bankruptcy estate also.

…

TRUSTEE: [I]t does appear now that Mr. Zinnel does take the position, I think very clearly, that he did not have an interest in System 3 at all and that whatever he had he says was transferred prior to the bankruptcy.

And if that is the case, then it really does seem very difficult to understand how he can argue that this sale should not go through, that the sale price is inaccurate, or for any of those reasons. And we have raised in our papers the standing argument, that Mr. Zinnel really doesn't have standing to contest really virtually anything in this case the trustee has sought to do, because he has not demonstrated the necessary pecuniary interest in whatever the matter is.

In this particular case, unless he can really make a reasonable, credible showing that he has a likelihood of getting any money out of this case as a surplus case, that he really doesn't have the standing to complain about this.

…

COURT: Mr. Zinnel, the first thing you can do is you can tell me how you are adversely and pecuniarily affected by the trustee's proposed transaction.

…

---

[4] Erroneously stated; the bankruptcy later clarified the year was 2001.

APPELLANT: Because System 3, based on documents provided by the government, I estimate it has net assets of 15- to $20 million. Don't know an interest, but if later determined to be an interest, this case, this estate is absolutely a surplus estate by tens of millions of dollars, and that's over and beyond the money just on one year's tax returns that Tom Wilbert has pulled out of System 3.

So if this is a surplus case, I'm absolutely affected. The claims are under a million dollars.  I will be filing objections to those claims. And of any money that comes into the estate, I'm entitled to that money over and beyond what the creditor claims are in – this is not a $6 million bankruptcy case.

COURT: Well, necessary to you making that argument, maybe you want to think carefully about making that argument.  The creditors in the estate have an interest in System 3.

…

And so by saying, "Oh, the estate's going to get a very large amount of money and I have an interest in that," is tantamount to you saying that the estate has an interest in System 3, and I'm not sure you want to make that assertion.

APPELLANT: Yeah.  I am not making that assertion, your Honor. What I'm saying – I'm answering your question – is, if – there has to be a determination. If the estate has an interest, it appears to me that what the estate is trying to do is sell their interest, the estate's interest, if any … And I think that's fraud on trying to sell something that the estate doesn't own.

I've requested documents after documents from the trustee.  There is discovery due today.  I have been requesting documents since November 3rd.  The trustee says she has open access to the books. Part of the reason why there's problems with some evidence is because the trustee won't provide any documents.

…

[I]f the estate does have an interest, it's the equivalent of the proposed buyer using money that he's plundered from the company to buy the estate's interest.  And there has been no determination on this, and the trustee will not provide any documents to support, even though she has declared under penalty of perjury that she has open access to System 3's records.

…

But the other problem the trustee has is the trustee didn't give notice to people that she knows that have an interest.  And she declares – in her motion she doesn't declare it, this motion – that she knows of no assignment, but yet there is one in the indictment where the assignment has been signed along with it, and I have provided it. The government provided it to me.

…

The other thing is the trustee has done nothing to market this. Nothing. If she sold a house, she'd engage a real estate agent and market it. She said, you know – and I happen to know other people that are capable of running System 3.

…

You know, it just screams that this proposed sale is the product of negotiations conducted in a shroud of secrecy with collusion and, I believe, fraud. The bidding process is a sham. The trustee handed out one bidder's paddle and hasn't advertised it to anybody.

Theoretically, the owners of System 3 should be able to bid as much as Mr. Wilbert is bidding because the source of the funds is the same. So it just  I strongly believe something is very rotten in Denmark here.

…

COURT: I am not persuaded, Mr. Zinnel, that you have standing in this situation because I am not persuaded that you are adversely and pecuniarily affected by the outcome of this motion to sell.

The theory of the motion is that there is a contest over who owns System 3, Incorporated, and specifically whether the bankruptcy estate owns System 3.

The trustee has identified the proposition that that is hotly contested and the trustee is selling whatever the estate's interest is. And it may be zero. Or, as we just discussed, it may be the equivalent of selling the Brooklyn Bridge.

This is a situation in which the rights of the parties are revealed. It's not fraud on that account. And the trustee has examined the situation and is satisfied that the proposed price of $350,000 is an appropriate price, even though the trustee is mindful of the possibility that System 3 has greater funds.

The only way in which you would have standing, Mr. Zinnel, in this matter would be if you claimed an ownership interest in System 3.

And I'm mindful that you assert that System 3 is the entity referred to as Company 1 in the federal indictment against you and that the proposed purchaser, Mr. Wilbert, is the Nominee 1 in the indictment against you. To me, the only logical basis on which you can be allowed to oppose is the assertion that you own System 3.

All that is being surrendered by this proposed compromise is the contention that the estate has an interest in System 3, and it is not chopping off the rights of any third person, including you, Mr. Zinnel. If you contend, after the criminal prosecution is over, that you have an interest in System 3, you could attempt to prosecute an

8

action based on some theory that somehow you have an interest in System 3 that was not property of the bankruptcy estate.

…

Turning to the motion to sell, I am presented with a situation where there is an offer of $350,000. Mr. Gonzales, the accountant to the trustee, has been through the records of System 3 and has agreed that System 3 in the past has been quite profitable, perhaps consistently more than would support or something that would support a number considerably greater than $350,000. However, the performance of the company during this economic downtown has been comparatively negative, which depresses value.

And we have a situation where the debtor, at least in the eyes of the trustee, is not a clear case that the estate owns enough of an interest in System 3 to make it worth litigating to achieve an offer greater than what has been offered of $350,000.

The standards for reviewing a compromise are that the compromise must be fair and equitable, taking into account probability of success in litigation, difficulties, if any, in the matter of collection, complexity and expense of litigation, and the interests of creditors should they express a view.

Here, none of the creditors have expressed a view. There has been notice to all the creditors. I took another look a moment ago at the notice of the motion.

Looking at probability of success in litigation, probability is highly uncertain because the proposed buyer is already in control of the company, operating it, and contends that the estate has no surviving rights at all. None. And the outcome of that is very difficult to predict.

The next question is difficulties in the matter of collection. Well, collection from System 3 will depend upon the buyer's commitment to operate System 3. And if the buyer walked away, System 3, which is not apparently a large organization independent of the efforts of its manager, would easily become moribund.

The complexity and expense of litigation is another consideration, and here it is crystal clear to me … that litigation would be very complicated and very expensive and potentially would cost greater that what would be achieved by way of the net compromise that has been agreed to.

Therefore, I am persuaded in viewing the matter as a compromise that the $350,000 transaction is fair and equitable within the meaning of the applicable standard.

Turning to viewing the matter as a sale, of course, there has been an opportunity for overbidding, and nobody has expressed an interest. There has been at least notice to all creditors.

9

> In addition, I'm asked to determine that the purchaser is acting in good faith. And as I've discussed with counsel for the trustee, that is a peculiar consequence in this particular situation, because the trustee is not selling something that is unambiguously the property of the estate. She is selling something that is precisely the opposite.
>
> The trustee has an ambiguous right that would require a considerable amount of litigation to determine and vindicate that would, in effect, be given up. So the purchaser is acquiring part of the cloud on title and presumably other clouds on title if there are assertions from other people or other entities that they have an interest in System 3.
>
> Those issues, if there are any of those issues out there in the universe, would not be effected by this, the sale transaction. And the determination of good faith purchase, which has a limitation on appellate remedy in case the sale is reversed, would not affect the rights of third persons who might be able to contend that they own an interest in System 3.

(EOR, Transcript of Hearing on Trustee's Motion to Sell System 3, Nov. 22, 2011, TAB 71 at 789–806.)

On the issue of whether he had standing to contest the sale, Appellant in his instant moving papers argues as follows. He "has a financial stake in the motion to sell because the case could possibly be a surplus estate." (ECF No. 12 at 24.) In the criminal case, in which Appellant was ultimately convicted, "the Government alleges that [Appellant] had a substantial ownership interest in System 3, Inc. when he filed bankruptcy on July 20, 2005 and thus the Government alleges the bankruptcy estate has a substantial ownership interest in System 3, Inc. currently." (ECF No. 12 at 25.) "[T]he income generated by System 3 is attributable, in part, to the contacts and relationships that the Debtor originally brought to the company as part of his contribution under the Business Formation Agreement, which was intended to be compensated to the Debtor through an allocation of shares subsequent distributions of income from the company pursuant to the Business Formation Agreement." (ECF No. 12 at 25.) Appellant further directs the Court to the November 22, 2011, hearing, *supra*, in which Appellant stated to the bankruptcy court that value of System 3 was likely 15 to 20 million dollars; Appellant stated this valued amount was confirmed by documents provided by the Government in his criminal case. (EOR, Tab 71 at 797–98.) Appellant also argues that during the criminal case, the Government "asserted that

10

Appellant had secretly retained his ownership" in System 3.  (Appellant's Reply, ECF No. 19 at 6.)

To reiterate, the issue before this Court is not whether the bankruptcy court erred in approving the sale of System 3, but whether the bankruptcy court erred in granting a protective order excusing Appellee from responding to discovery relevant to the sale of System 3.  The stated basis for the bankruptcy's court's decision to grant the protective order appears to be the same basis on which it approved the sale: that Appellant lacked an ownership interest in System 3 and thus lacked standing to approve the sale.  However, the instant appeal concerns only the court's granting of the protective order.  In consideration of Appellant's arguments stated above, and the foregoing dialogue with the bankruptcy court stated above, the Court finds that Appellant has not established that the bankruptcy court erred in granting the protective order.  The Court so finds, for the following reasons.

First, the Court finds it is simply unclear whether Appellant had standing to oppose the bankruptcy estate's motion to sell System 3.  This lack of clarity is due in part to Appellant's own statements made during the course of the proceeding.  For example, in his supplemental opposition to the trustee's motion to sell, Appellant stated: "Before the bankruptcy court can order property sold, there must be a finding that the bankruptcy estate has a legal interest in the assets sought to be sold .. The Trustee attempts to consummate a lien-free sale … of an asset that the Debtor does not even own.  Rather, the subject asset was assigned to Done Deal, Inc. over a year earlier prior to the commencement of this bankruptcy case[;] thus the majority owners of System 3, Inc. are Done Deal, Inc. and David Zinnel with Thomas Wilbert having a minority interest in System 3."  (EOR, Tab 17 at 117.)

Appellant further argued in that motion that the sale could not be consummated, because other parties with an interest had not been noticed of the sale, and that an "assignment" had taken place: "The indictment in the [criminal case] alleges that Done Deal, Inc. is an owner of System 3, Inc. based on an assignment.  Done Deal, Inc. did not receive notice of [the motion to sell] according to the Proof of Service … Debtor is unaware of David Zinnel or Done Deal, Inc. consenting to the proposed sale, and the trustee is suspiciously silent of David Zinnel's and Done

Deal's ownership in her [motion]. Thus, because the trustee is trying to sell System 3 without other[s'] consent, the court cannot grant the motion." (EOR, TAB 17 at 134.)

The Court also notes the underlying facts relevant to System 3, which formed the basis for his indictment and conviction in his criminal trial. In summary, the offense conduct involved Appellant's forming System 3 in October, 2001, with his brother and the eventual buyer of System 3, Tom Wilbert. During the bankruptcy proceeding that began in 2005, Appellant continued to receive unreported income from System 3. After that proceeding ended, Appellant and others worked to pay Appellant back for the investments he had made in System 3, which included using Done Deal, Inc. as a recipient for money that was actually going to Appellant. In or about May, 2008, Wilbert told Appellant that he wanted to terminate System 3's relationship with Appellant, and Appellant agreed to terminate his partnership investment in exchange for a $4,000,000 payment to Done Deal, Inc. (Presentence Report, Case No. 11-cr-234, ECF No. 296 ¶¶ 6–11.) So in essence, when Appellant asserts that government-produced documents show that he secretly had an ownership interest in System 3, Inc. at the time the sale was approved in November, 2011, he refers to an interest insofar as it was integral to his convictions for bankruptcy fraud and related charges. Appellant does not produce authority for the proposition that this interest entitles him to oppose the sale of System 3.

The submitted excerpts of the record, including Appellant's own statements, support the position that he lacked an ownership interest in System 3 at the time Appellee moved for authorization to sell System 3. The Court does not find that the bankruptcy court's determination as to Appellant's ownership interest in System 3 was clearly erroneous. To the extent Appellant argues that the court erred in basing its decision to issue a protective order on these grounds, the Court does not find Appellant has established the bankruptcy court abused its discretion in making that decision.[5]

As an additional matter, the discovery sought by Appellant appears to be part of a strategy

---

[5] This Court does not reach the issue of whether, in the first instance, Appellant has standing to appeal because there is likely to be a surplus after bankruptcy. *In re P.R.T.C., Inc.*, 177 F.3d 774, 778, n. 2 (9th Cir. 1999) ("Ordinarily, a debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy").

to oppose all aspects of the bankruptcy proceeding, regardless of the merits of these oppositions. For example, on October 19, 2011, Appellant filed a "Notice of Debtor's Intent to Oppose and Object to Any Motions and/or Applications Filed in this Case from this Date Forward Unless Debtor Files a Notice of Non-Opposition." (EOR, Tab 1 at 1.) On the same date, and on October 24, 2011, Appellant then served the discovery at issue, which consisted of 67 special interrogatories, 62 requests for admissions, and 75 requests for production of documents and things. (ECF No. 17 at 8; *see also* Mot. For Protect. Order, EOR, Tab 36 at 402–404, detailing the pleadings filed by Appellant since the time the bankruptcy case was re-opened in June, 2011.) The Court notes that under Fed. R. Bankr. P. 7026 & 9014 (incorporating Fed. R. Civ. P. 26), the bankruptcy court may issue a protective order with respect to discovery, for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[6] The bankruptcy court did not state it was granting the motion for a protective order on the grounds of vexatious litigation; however, Appellee's position is reasonable that these concerns would support granting the protective order.

C. Other issues

The Court notes the following additional arguments raised by Appellant, but does not find they establish the bankruptcy court abused its discretion in granting the protective order.

Appellant argues: he "has standing in his own bankruptcy case, as a party-in-interest, to participate in a case in which he is the only party." (ECF No. 12 at 2, 29–30.) Generally speaking, Appellant is correct that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999) ("The Bankruptcy Code provides that '[a] party in interest, including ... a creditor ..., may raise and may appear and be heard on any issue in a case under this chapter.' 11 U.S.C. § 1109(b). Chapter 7 includes no comparable provision, but in practice bankruptcy courts routinely

---

[6] *But see* Fed. R. Civ. P. 26(c), providing that the court may specify the terms of discovery, including via method other than the one proposed by the party seeking discovery, and limit the scope of discovery.

entertain adversary proceedings against Chapter 7 trustees"). However, the specific issue here is whether a protective order pertaining to discovery may issue on the basis that Appellant lacked standing to oppose the sale of an asset, not whether as a general matter Appellant may participate in his own bankruptcy proceeding. Appellant was heard on the issue of whether he had standing to challenge the sale as the foregoing excerpt from the November 22, 2011, hearing demonstrates. Appellant's voluminous filings in his bankruptcy proceeding shows that he was an active participant in that proceeding.

Appellant argues: "[i]n a bankruptcy case, there is no requirement that there must be on file in the case a motion, an adversary proceeding, or any contested matter, before any party or person [in] interest may propound discovery." (ECF No. 12 at 33.) Regardless of the viability of that argument, the bankruptcy court is also permitted to grant a protective order with respect to discovery for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Bankr. P. 7026 & 9014; Fed. R. Civ. P. 26. Appellant does not establish that the bankruptcy court abused its discretion in granting the protective order based either on the "good cause" standard set forth in Fed. R. Civ. P. 26, or because of the court's finding that Appellant lacked standing to challenge the sale of System 3.

Appellant argues: "the Trustee must furnish such information concerning the estate and the estate's administration as is requested by a party or person-in-interest pursuant to 11 U.S.C. § 704(a)(7) and well-settled decisional law." (ECF No. 12 at 30.) However, the statute in full provides: "*unless the court orders otherwise*, [the trustee shall] furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(7) (emphasis added). The bankruptcy court ordered otherwise in this case, which is the reason for the instant appeal.

The Court observes once again that the subject of the instant appeal is the bankruptcy court's issuance of a protective order regarding discovery, including discovery relevant to System 3. Underlying all of Appellant's arguments is his concern that the sale of System 3 was improper, and that he had standing to oppose that sale. While the instant appeal presents some overlapping issues with an appeal that would challenge the sale itself, the latter is not the subject of this

appeal.  The only issue before this Court is whether the bankruptcy court's issuance of a protective order – which relatively speaking is an ancillary issue to the court's approval of the sale itself – was proper or an abuse of discretion.  The Court does not find that the bankruptcy court's issuance of a protective order constitutes an abuse of discretion.

\* \* \* \*

For the foregoing reasons, the Court finds:

- The bankruptcy court's January 20, 2012 order granting the trustee's motion for reconsideration of the order denying a motion for a protective order is AFFIRMED.
- The bankruptcy court's January 20, 2012 order granting the trustee's motion for a protective order is AFFIRMED.
- The Clerk of the Court may close the case.

Dated:  November 17, 2015

Troy L. Nunley
United States District Judge